## LEWIS v. STATE.

1. STATUTES—APPROPRIATIONS—RESTRICTIONS—RETIREMENT PAY OF NATIONAL GUARD OFFICERS—INTENT.

Like provision of 3 successive annual appropriation acts for the military establishment that "retirement pay whether for disability or length of service provided by the United States shall be deemed to reduce in like amount the retirement pay based upon actual service to which any retired officer of the military establishment is entitled from this State and this appropriation is so limited" exhibited a constitutionally expressed consistent legislative intent that a retired officer of the national guard receiving disability or service-length pay from the national government should find his retirement pay reduced or eliminated (Const 1908, art 5, § 21; PA 1950 [Ex Sess], No 32, § 25; PA 1951, No 272, § 26; PA 1952, No 201, § 8).

2. SAME—TITLE OF ACT.

Claim that provision restricting retirement pay for officers of the national guard was not within the title of annual appropriation acts including appropriations from the general fund for the military establishment held, without merit (Const 1908, art 5, § 21; PA 1950 [Ex Sess], No 32, § 25; PA 1951, No 272, § 26; PA 1952, No 201, § 8).

3. SAME—TITLE OF ACT—APPROPRIATIONS.

The legislative utilization of a customary title found in general appropriation acts does not depart from or render multifarious the titled object thereof by insertion of special provisions limiting or qualifying appropriations as made under such title as such provisions are quite germane to the title-declared objective and belong there, rather than elsewhere, if legislatively intended and constitutionally processed (Const 1908, art 5, § 21).

REFERENCES FOR POINTS IN HEADNOTES
[2–4] 42 Am Jur, Public Funds § 47.
[6] 40 Am Jur, Pensions § 11.

4. SAME—APPROPRIATIONS—OBJECT OF ACT.

> The tieing of legislative strings to appropriations of State funds for governmental purposes does not necessarily add a second object to an appropriation law, although the imposition of a condition which amounted to a legislative invasion of a foreign field would be invalid (Const 1908, art 5, § 21).

5. SAME—CONTINUING APPROPRIATION—SUSPENSION.

> The continuing appropriation for retired officers of the national guard, contained in the act relative to the military establishment was expressly suspended by provisions of annual appropriation acts including appropriations from the general fund for the military establishment (CL 1948, §§ 32.49, 32.49a, 32.49b; PA 1950 [Ex Sess], No 32, § 15; PA 1951, No 272, § 15).

6. PENSIONS—NATIONAL GUARD OFFICER—ANNUAL APPROPRIATION ACT SUSPENDING CONTINUING APPROPRIATIONS.

> A retired brigadier general of the national guard who was receiving disability pay from the Federal government in the same amount he claimed as retirement pay from the State, was by reason of such receipt from the Federal government not entitled to retirement pay from the State, where the continuing appropriation provisions of the act relating to the State military establishment were constitutionally suspended and superseded by provisions of annual appropriation acts including appropriations for the military establishment and the Constitution prohibits the payment of State funds except in pursuance of appropriations made by law (Const 1908, art 5, § 21; art 10, § 16; CL 1948, §§ 32.49, 32.49a, 32.49b; PA 1950 [Ex Sess], No 32, §§ 15, 25; PA 1951, No 272, §§ 15, 26; PA 1952, No 201, § 8).

7. COSTS—APPEAL—RETIREMENT PAY.

> No costs are allowed on appeal in brigadier general's action against State to recover retirement pay, on affirmance of judgment disallowing his claim.

Appeal from the Court of Claims; Souter (Dale), J., presiding. Submitted March 14, 1958. (Docket No. 70, Calendar No. 46,220.) Decided June 11, 1958.

Claim by Joseph H. Lewis against the State of Michigan and Military Establishment for sums

claimed due under retirement benefits. Judgment for defendants. Plaintiff appeals. Affirmed.

*Hubbard, Fox & Thomas,* for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *Russell A. Searl,* Assistant Attorney General, for defendants.

BLACK, J. This case was assigned to the writer during the present April term.

Plaintiff, a retired brigadier general of the Michigan national guard, sued in the court of claims to recover monthly "retirement pay" allegedly due and unpaid for the period starting July 1, 1950, and ending September 18, 1952. The rate of pay declared in the statement of claim is \$412.50 per month. It is agreed that such was the proper monthly amount to which plaintiff would have become entitled (during the stated period) but for intervening issuable events, which events the attorney general advances by answer to plaintiff's statement of claim. The trial judge considered that one of such issuable events—the defensively pleaded want of an "appropriation for the payment of any pension to plaintiff after June, 1950"—called for judgment in favor of the defendant State and military establishment.* Judgment entered accordingly. Plaintiff appeals.

The contending parties have relevantly stipulated:

"By virtue of said provisions PA 1909, No 84, §§ 49a and 49b, as added (CL 1948, §§ 32.49a, 32.49b [Stat Ann 1952 Rev §§ 4.640(1a), 4.640(1b)]), petitioner became entitled to certain retirement ben-

---

* A second defensive point— that plaintiff's claim was neither filed nor noticed within the limitation period allotted by section 11a of the court of claims act (CL 1948, § 691.111a [Stat Ann 1957 Cum Supp § 27.3548 (11–1/2)])—was likewise upheld below.

efits in the sum of $412.50 monthly, which sum was paid through June 30, 1950, from said retirement date and has not been paid since. The amount of retirement pay was calculated and determined pursuant to section 49 of said act, being CL 1948, § 32.49 (Stat Ann 1952 Rev § 4.640[1]).

"Petitioner received the same amount from the Federal Government during the period in question, *i.e.,* July 1, 1950, to September 18, 1952, not by reason of length of service, but by reason of 100% disability. This Federal disability pay is subject to periodic review by medical examinations.

"Money for retirement pay is made available by appropriation acts of the legislature from the general fund. There is no 'by-line' or 'object classification' as such for retirement pay. It has been included under the subheading 'Contractual Service, Supplies, and Materials,' under the main division entitled 'Military Establishment.'

"The finance officer of the military establishment prepares the budget estimates as given to him by the various departments of the military establishment. This is in turn approved by the military board, who in turn submits it to the department of administration. The detailed breakdown of the budget estimates, as submitted by the military establishment (defendants' exhibit A) as to retirement pay requests a total of $81,360 for 51 different persons (not specifically named) for the fiscal year, July 1, 1950, through June 30, 1951. There are in excess of 20 major headings in the budget estimates under the heading 'contractual service, supplies, and materials,' and include such items as 'rentals, telephone, utilities, professional service,' et cetera. 'Retirement pay' is a subheading under one of the 20 main headings entitled 'other fees and compensations.'

"The military establishment can switch funds from one object classification to another if necessary to meet an obligation, as testified to by W. W. Harper, finance officer of the military establishment.

"PA 1950 (Ex Sess), No 32, appropriated $1,587,-
500 for the fiscal year July 1, 1950, through June 30,
1951, for 'contractual service, supplies and materi-
als' for the military establishment. Added to this
appropriation was $357.23 brought forward from
the appropriation of the previous year. From the
total of these 2 sums, $1,509,523.26 was spent; $47,-
093.83 was transferred and $31,240.14 lapsed.

"PA 1951, No 272, for the fiscal year July 1, 1951,
through June 30, 1952, appropriated $1,587,250 for
'contractual service, supplies and materials' for the
military establishment; of this amount $1,496,721.59
was spent, $89,524.03 lapsed, and $1,004.38 was for-
warded to the next fiscal year.

"PA 1952 No 201 appropriated $1,587,250 for the
fiscal year July 1, 1952, through June 30, 1953, for
'contractual service, supplies and materials' for the
military establishment. Add to this the sum of
$1,004.38 forwarded from the prior fiscal year for a
total authorization of $1,588,354.38. Of this total
amount $1,554,585.28 was spent and $33,769.10
lapsed.

"In each of the above 3 appropriation acts the fol-
lowing provision was inserted (being sections 25, 26,
and 8, respectively) :

" 'Retirement pay whether for disability or length
of service provided by the United States shall be
deemed to reduce in like amount the retirement pay
based upon actual service to which any retired of-
ficer of the military establishment is entitled from
this State and this appropriation is so limited.' "

Plaintiff contends that controlling statutory pro-
visions appear in the "military establishment act"
(PA 1909, No 84, as amended). He refers particu-
larly to the original and present title of the act,* to
present sections 49, 49a and 49b thereof (CL 1948,

---

* "An act to increase the efficiency of the military establishment
of the State of Michigan, *to make an appropriation therefor,* and to
repeal all former acts or parts of acts inconsistent with the provisions
of this act." (CL 1948, ch 32, "Military Establishment.")

§§ 32.49, 32.49a, 32.49b [Stat Ann 1952 Rev §§ 4.640 (1), 4.640(1a), 4.640(1b)]), and says that the act as amended constitutes a continuing appropriation, the relevant continuity of which did not terminate until PA 1952, No 134 (amending the military establishment act by adding new section 49c thereof) became effective September 18, 1952 (CLS 1956, § 32.49c [Stat Ann 1952 Rev § 4.640(1c)]). Plaintiff relies on the authorities gathered in the excellent annotation headed "Statutory provisions creating office and fixing salary as a continuing appropriation," found in 164 ALR commencing at page 928. The attorney general counters with appropriation acts of PA 1950 (Ex Sess), No 32, § 25, p 117; PA 1951, No 272, § 26, p 577; and PA 1952, No 201, § 8, p 306, and insists that continuity if any of pertinent appropriation made by the military establishment act must be read in conjunction with the restraint of above quoted sections 25, 26 and 8 of the mentioned appropriation acts.* The principle of unitary view of statutes adopted *in pari materia* is stressed by the attorney general, and it is said in his brief that if the military establishment act did continuously appropriate as claimed, the legislative will that further appropriation (in cases as here of duplicating Federal and State pensions) be terminated was effectively evinced starting with the extra session of 1950.

After having examined, under the luminary of section 21 of the 5th article of our Constitution (1908), the respective and substantially-alike titles of the cited appropriation acts, the trial judge ruled

---

* As we have seen it is stipulated that General Lewis duly received, during the period between July 1, 1950, and September 18, 1952, a Federal pension for total disability amounting to $412.50 per month. Accordingly, and if same are valid as against his contention, counsel agrees that sections 25, 26 and 8 of the cited appropriation acts effectively prevent the recovery of retirement pay as sought by the general in this suit.

that said sections 25, 26 and 8 were purposed toward "taking away the retirement pay" of retired officers in instances as at bar and that such purpose did not come within the pale of the title object of appropriation. Having so ruled, Judge Souter nevertheless held that plaintiff was not entitled to recover, as in his statement of claim alleged, because "it definitely appears that the legislature did not make any appropriation for the payment of any pension to plaintiff after June, 1950."

We are called upon to decide whether the military establishment act operated—after the fiscal year ending June 30, 1950—as a continuant appropriation on strength of which plaintiff is entitled to recover. The answer must be "No," it appearing that the asserted continuity of appropriation was decisively broken by the following separate provisions of the first 2 of the noted appropriation acts:

"Notwithstanding any other provision of law, in any case wherein a continuing appropriation exists for any item or purpose under any law of this State, and wherein any appropriation is also contained in this act for the same item or purpose, this act shall supersede such continuing appropriation during the fiscal year ending June 30, 1951." (PA 1950 [Ex Sess], No 32, § 15, p 115.)

"Notwithstanding any other provision of law, in any case wherein a continuing appropriation exists for any item or purpose under any law of this State, and wherein any appropriation is also contained in this act for the same item or purpose, this act shall supersede such continuing appropriation during the fiscal year ending June 30, 1952." (PA 1951, No 272, § 15, p 575.) *

---

* This practice, of superseding continuing appropriations in the manner shown, is nothing new. It started with the general appropriation act of 1939, No 327, § 5, p 842.

No corresponding declaration of control over continuing appropriations appears in the pertinent appropriation act of 1952 (No 201), probably on account of the fact that such was for that year one only of a number of separate appropriation acts. We need not decide whether such omission—from Act No 201—operated to pick up or start anew the claimed continuity of appropriation (for the fiscal year ending June 30, 1953), the legislature during the session of 1952 (by amendment of the military establishment act) concededly having ended further claims such as plaintiff sues on here (See PA 1952, No 134, noted *supra*).

Aside from the conclusion so announced we are satisfied that said sections 25, 26 and 8 fairly exhibit consistent legislative intent that a retired officer of the national guard receiving and continuing to receive disability or service-length pay from the national government shall henceforth find his retirement pay (otherwise called for by the military establishment act and appropriations therefor) reduced or eliminated as the case may be. These duplicating sections are clear and understandable, and plaintiff's allegation of constitutional invalidity thereof is wanting of merit.

The legislature, utilizing the customary title found in past general appropriation acts, does not depart from or render multifarious the titled object thereof by insertion of special provisions limiting or qualifying appropriations as made under such title. Limitational provisos, appended to appropriations made by an act thus entitled, are quite germane to the title-declared objective and belong there—if legislatively intended and constitutionally processed—rather than elsewhere. It was so ruled, a decade ago by the attorney general, in connection with then pending Senate Bill No 4 (the titled object being

that of appropriation and distribution of funds to qualifying school districts). In opinion No 764 (OAG 1947–1948, p 675), prepared by Deputy Attorney General Bradt and Assistant Attorney General Thrun, the following appears:

"The tieing of legislative strings to appropriations of State funds for governmental purposes has never been considered as adding a second object to an appropriation law, *Regents of the University of Michigan* v. *Auditor General,* 167 Mich 444; *State Board of Agriculture* v. *Auditor General,* 226 Mich 417, although the Supreme Court has held invalid conditions attached to appropriation acts, which conditions amounted to legislative invasion of foreign fields. *Civil Service Commission* v. *Auditor General,* 302 Mich 673."

We adopt that part of the opinion as quoted, finding it consonant with views declared above.

To recapitulate: The continuity of appropriation, made as claimed by the military establishment act, was expressly suspended by the legislature during each of the fiscal years making up the bulk of plaintiff's claim. The identified annual appropriation acts of 1950, 1951 and 1952 declare due legislative intent that retirement pay as sued for here be eliminated. The eliminative provisos (said sections 25, 26 and 8) are valid as against objection raised under section 21 of said article 5 (Const 1908). Such being so, and since "No money shall be paid out of the State treasury except in pursuance of appropriations made by law" (Const 1908, art 10, § 16),* the judgment entered below was right as against plain-

---

* It is emphasized, for possible future reference, that this constitutional mandate refers to and hinges upon appropriations made by law.

tiff's specifications of error. No other question is decided, none being advanced.

Affirmed. No costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.