*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MACOMB INTERMEDIATE SCHOOL DISTRICT, ALGONAC COMMUNITY SCHOOLS, BAY ARENAC ISD, BIRCH RUN AREA SCHOOLS, EASTERN UPPER PENINSULA INTERMEDIATE SCHOOL DISTRICT, GARDEN CITY PUBLIC SCHOOLS, GENESEE INTERMEDIATE SCHOOL DISTRICT, GRATIOT-ISABELLA RESD, HURON INTERMEDIATE SCHOOL DISTRICT, HURON VALLEY SCHOOLS, INGHAM INTERMEDIATE SCHOOL DISTRICT, KALAMAZOO RESA, KENT INTERMEDIATE SCHOOL DISTRICT, LAKEVIEW PUBLIC SCHOOLS, LINCOLN PARK PUBLIC SCHOOLS, LIVONIA PUBLIC SCHOOLS, MARQUETTE-ALGER RESA, MARQUETTE AREA PUBLIC SCHOOLS, MIDLAND COUNTY ESA, MONROE COUNTY INTERMEDIATE SCHOOL DISTRICT, MONROE PUBLIC SCHOOLS, NORTHWEST EDUCATION SERVICES, OAKLAND SCHOOLS, ROMEO COMMUNITY SCHOOLS, ROMULUS COMMUNITY SCHOOLS, ROSEVILLE COMMUNITY SCHOOLS, SAGINAW INTERMEDIATE SCHOOL DISTRICT, ST. CLAIR COUNTY RESA, TRAVERSE CITY AREA PUBLIC SCHOOLS, TRENTON PUBLIC SCHOOLS, UTICA COMMUNITY SCHOOLS, VAN BUREN PUBLIC SCHOOLS, WARREN CONSOLIDATED SCHOOLS, WAYNE RESA, WOODHAVEN-BROWNSTOWN SCHOOL DISTRICT, MICHAEL BAYER, JOHN BERNIA, MARK BLASZKOWSKI, ANDREW BRODIE, JOSEPH CANDELA, DAVEDA COLBERT, TERRY DANGERFIELD, MICHAEL DEVAULT, DANIEL DOMBROWSKI, SHELLY DUCHARME, BENJAMIN EDMONDSON, DEREK FISHER, MARK GREATHEAD, KENNETH GUTMAN, SCOTT HARDY, PAUL HUNGERFORD, PETER

FOR PUBLICATION
April 10, 2026
1:39 PM

KUDLAK, TARA MAGER, ROBBYN MARTIN,
DEDRICK MARTIN, DIANE MARTINDALE,
ANGIE MCARTHUR, JASON MELLEMA,
DOUGLAS MENTZER, STEPHEN MCNEW,
ROBERT MONROE, GREGORY NYEN,
ANDREA OQUIST, KARL PAULSON, TODD
ROBINSON, PAUL SALAH, JOHN SEARLES,
ZACK SEDGEWICK, ANDREW SHAW,
BRENDA TENNISWOOD, and JOHN VAN
WAGONER II,

        Plaintiffs-Appellants

v

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF EDUCATION, and STATE
SUPERINTENDENT FOR PUBLIC
INSTRUCTION,

        Defendants-Appellees.

No. 378748
Court of Claims
LC No. 25-000175-MZ

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

YOUNG, J.

Plaintiffs, consisting of a consortium of schools and school officials, appeal as of right the December 17, 2025 order of Court of Claims that granted summary disposition in favor of defendants, the State of Michigan (the State), the Michigan Department of Education (the MDE), and the State Superintendent for Public Instruction (the SPI). Plaintiffs challenge the constitutionality of an amendment to the State School Aid Act of 1979 (the SSAA), MCL 388.1601 *et seq*., that conditions a school's receipt of funds that were earmarked for "school safety and mental health," MCL 388.1631aa(1), on the school's agreeing to waive "any privilege" and comply with a "comprehensive investigation" "in the event of a mass casualty event." MCL 388.1631aa(9). Because the amendment does not violate the Michigan Constitution, we affirm the order of the Court of Claims.

I. BACKGROUND AND LEGAL HISTORY

The statute at issue, MCL 388.1631aa, was originally enacted by 2022 PA 144, which allocated certain funds "only to provide payments to districts to improve student mental health," including several examples of what that might entail. MCL 388.1631aa(1), as enacted by 2022 PA 144. The only conditions were that the "districts must apply for funding under this section in a form and manner prescribed by the department" and include some documentation of how it would use the funds, and the districts must coordinate "to avoid duplication of services and to

streamline delivery of mental health services to students." MCL 388.1631aa(4) and (5), as enacted by 2022 PA 144.

The statute was then amended twice, in the year that followed its enactment, to expand the kinds of schools that can receive funds and to add activities to "improve student safety" to the kinds of services for which the funds could be used. MCL 388.1631aa(1), as amended by 2023 PA 103. Specifically, the first amendment stated that schools could "opt in and agree to receive funding under this section," removed language indicating that the allowable expenditures list was not exhaustive and expanded that list of allowable expenditures. MCL 388.1631aa(1) and (2), as amended by 2024 PA 120. This first amendment also required schools to provide a financial expense report. MCL 388.1631aa(3), as amended by 2024 PA 120. The second amendment that year added a prohibition against using money for support staff and required the MDE to use the schools' expense reports to prepare further reports. MCL 388.1631aa(1) and (4), as amended by 2024 PA 148.

The parties stipulated to the following additional facts:

3. On March 18, 2025, Senate Bill 166 ("SB 166") was introduced in the Michigan Senate. SB 166 was an appropriations bill for the SSAA budget for Fiscal Year 2025–26.

4. As introduced, SB 166 (S-1) did not contain the language that would later become Section 31aa(9) of the SSAA, MCL 388.1631aa(9) ("Section 31aa(9)"), which contains the statutory clause at issue in this case.

5. The language at issue contained in Section 31aa(9) first appeared in a substitute version of the bill, SB 166 (S-3), which was reported from the Senate Appropriations Committee and passed by the full Senate on May 14, 2025.

6. On that same day, SB 166 (S-3) was transmitted to the Michigan House of Representatives.

7. On October 1, 2025, the start of the state's Fiscal Year 2025-26, the Michigan House of Representatives adopted and passed its own substitute version of the bill, designated SB 166 (H-5).

8. On October 3, 2025, a joint Conference Committee issued its "First Conference Report on Senate Bill 166," containing the final, operative language of Section 31aa(9).

9. On that same day, both chambers moved to adopt the Conference Report without further amendment and the final version of the bill was passed.

10. The Governor signed SB 166 into law on October 7, 2025, where it was designated as Public Act 15 of 2025, and Section 31aa of 2025 PA 15 was codified as MCL 388.1631aa.

11. Plaintiff Schools are eligible to receive funding under Section 31aa(3) of the SSAA, MCL 388.1631aa(3) ("Section 31aa(3)") provided they meet all conditions required for funding.

12. Section 31aa(1) appropriates funds for school safety and student mental health programs for Fiscal Year 2025-26 and Section 31aa(3) requires MDE to make payments by December 31, 2025 to Schools that opt in and agree to receive funding that is conditioned on certain requirements set forth in Section 31aa, including without limitation Section 31aa(9) of the SSAA.

\* \* \*

14. All Section 31aa funding is conditioned on an agreement to "waive any privilege . . . in the event of a mass casualty event." MCL 388.1631aa(9).

\* \* \*

16. At issue in this case is Plaintiffs' allegation that the condition in Section 31aa(9) to receive a portion of Section 31aa(1) funds, i.e., that Schools "must affirmatively agree to waive any privilege that may otherwise protect information from disclosure in the event of a mass casualty event[,]" MCL 388.1631aa(9), violates several provisions of the state and federal constitutions.

17. As part of the Section 31aa(3) opt-in process, applicant Schools must agree to the conditions set forth in Section 31aa(9), including the agreement "to waive any privilege," as a prerequisite for receiving Section 31aa(3) funds.

Following commencement of this action, the parties stipulated to give the schools until December 4, 2025 to opt in to receive Section 31aa funding, and they gave the schools until December 30, 2025 to rescind their opt-in.[1]

In relevant part, the current version of MCL 388.1631aa, as amended by 2025 PA 15, is excerpted below. This Court adds emphasis to the portion that hereinafter this Court refers to as "the privilege waiver."

(9) To receive funding under this section, a district, an intermediate district, a nonpublic school, or the Michigan Schools for the Deaf and Blind must agree to be subject to a comprehensive investigation, *must affirmatively agree to waive any privilege that may otherwise protect information from disclosure in the event of a mass casualty event*, and must agree to comply with a comprehensive investigation.

---

[1] Before oral argument in this matter, plaintiffs filed a motion requesting this Court hold defendants in contempt for failing to comply with this stipulated-to opt out scheme. This Court denied that motion. *Macomb ISD v Michigan*, unpublished order of the Court of Appeals, entered April 2, 2026 (Docket No. 378748).

All of the following apply to a comprehensive investigation described in this subsection:

(a) The comprehensive investigation will assess the circumstances surrounding the mass casualty event, including, but not limited to:

(i) Emergency response effectiveness.

(ii) Compliance with safety protocols.

(iii) Communication procedures.

(iv) Any factors contributing to the incident.

(b) The governor shall designate an appropriate person or investigative entity to conduct the comprehensive investigation. This person or investigative entity may include, but is not limited to, state law enforcement agencies, independent review boards, or specially appointed task forces. The person or designated investigative entity has the authority to do all of the following:

(i) Access relevant records and data from the district.

(ii) Interview witnesses and district personnel involved.

(iii) Issue findings and recommendations based on the investigation.

(c) The person or investigative entity designated in subdivision (b) shall prepare a detailed report of its findings and submit the report to the governor and relevant legislative committees within 90 days following the conclusion of the investigation. The report must include recommendations for preventing future incidents and improving school safety protocols.

*     *     *

(12) As used in this section:

(a) "Mass casualty event" means any of the following that occur on school grounds or at a school-sponsored event:

(i) An incident resulting in significant injuries to not fewer than 3 individuals.

(ii) An incident resulting in fatalities.

(iii) An incident that exceeds the normal resources for emergency response available in the jurisdiction where the incident takes place.

(iv) An incident that results in a sudden and timely surge of injured individuals necessitating emergency services. [MCL 388.1631aa(9) and (12).]

Furthermore, MCL 388.1761 provides that a "school official or member of a board or other person who neglects or refuses to do or perform an act required by this act or who violates or knowingly permits or consents to the violation of this act is guilty of a misdemeanor."

The parties agreed that the only issues were questions of law. Plaintiffs and the State moved for summary disposition,[2] and the Court of Claims held a hearing. Plaintiffs argued that they were entitled to summary disposition under MCR 2.116(C)(10) because the SSAA was void for vagueness. Further, plaintiffs argued that the conditional receipt of funds was unconstitutional because it was coercive, and the privilege waiver violated the title-object clause of the Michigan Constitution, Const 1963, art 4, §24. Lastly, plaintiffs argued that Section 31aa(9) violated the separation of powers doctrine because the scope of the waiver included legal privileges that were exclusive to judicial review.

The State responded to plaintiffs' motion for summary disposition by arguing that the statute contains ample explanation of the terms and the parameters of the privilege waiver and thus, is not unconstitutionally vague. Lastly, the State argued that plaintiffs could not make the requisite showing that the statute violated the title-object clause or separation-of-powers. The State asked the trial court to grant summary disposition in its favor instead.

The trial court issued an opinion and order that discussed and rejected each of plaintiffs' arguments regarding the constitutionality of the statute, denied plaintiffs' motion for summary disposition, granted the State's motion for summary disposition, and denied plaintiffs' request to extend the rescission deadline until after the conclusion of the appellate process.[3]

This appeal followed.

---

[2] The MDE and the SPI took no position regarding the substantive merits of the constitutionality of the statute. The MDE and SPI instead argued that the trial court could not unilaterally amend the parties' binding agreement that required the parties to opt out by December 30, 2025, and therefore, defendants were entitled to summary disposition.

[3] About a month and a half after filing their claim of appeal, plaintiffs moved for this Court to issue an order prohibiting the MDE and the SPI from distributing Section 31aa funds until the conclusion of the appellate process, contending that they recently learned that the MDE and the SPI had not yet distributed all of those funds. This Court denied the motion. *Macomb ISD v Michigan*, unpublished order of the Court of Appeals, entered February 26, 2026 (Docket No. 378748).

## II.  THE TRIAL COURT CORRECTLY FOUND THAT MCL 388.1631aa(9)'S PRIVILEGE WAIVER IS CONSTITUTIONAL

### A.  THE PRIVILEGE WAIVER IS NOT VOID FOR VAGUENESS

Plaintiffs first argue that the trial court erred because the statute is unconstitutionally vague. We disagree.

### 1.  STATUTORY INTERPRETATION AND VAGUENESS CHALLENGES, GENERALLY

To interpret the meaning of the privilege waiver, this Court must "give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018).  "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz and Cohn LLP v Detroit*, 505 Mich 284, 294; 952 NW2d 358 (2020) (quotation marks and citation omitted).  Statutes and contracts are subject to similar principles of interpretation, *State Farm Mut Auto Ins Co v Estate of Fortin*, 350 Mich App 21, 31; 29 NW2d 665 (2024), and "if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear," *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 362; 314 NW2d 440 (1982).  In other words, a statute is not ambiguous if it can only be fairly interpreted in one way.

A void-for-vagueness challenge that does not implicate First Amendment rights will succeed only if the statute "does not provide fair notice of the conduct it regulates" or "gives the trier of fact unstructured and unlimited discretion in concluding whether the statute has been violated." *Warren v McLaren Flint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366226); slip op at 11 (quotation marks and citation omitted).  "Fair notice exists when the statute's meaning can be determined by referring to judicial interpretations, common law, dictionaries, treatises, or the common meanings of words." *People v Miller*, 326 Mich App 719, 738; 929 NW2d 821 (2019).  However, if the Legislature defines a term in a statute, that definition alone is controlling. *Janetsky v Co of Saginaw*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket Nos. 166477 and 166478); slip op at 8.  "A statute should be interpreted in light of the overall statutory scheme, and although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context." *In re Guardianship of Malloy*, 513 Mich 148, 170; 15 NW3d 142 (2024) (quotation marks and citation omitted).

### 2.  INTERPRETING "ANY PRIVILEGE"

In relevant part to this appeal, MCL 388.1631aa (emphasis added) states:

> (9) To receive funding under this section, a district, an intermediate district, a nonpublic school, or the Michigan Schools for the Deaf and Blind must agree to be subject to a comprehensive investigation, *must affirmatively agree to waive any privilege that may otherwise protect information from disclosure in the event of a mass casualty event*, and must agree to comply with a comprehensive investigation.

Plaintiffs argue that the phrase "any privilege" is unconstitutionally vague because it does not identify which privilege or privileges are to be waived, whether the privileges to be waived include those held by any individuals, or the duration of the waiver. When the phrase is read in context, however, "any" is not ambiguous, and it clearly refers only to privileges held by the school or district itself, and it also refers only to privileges related to information pertaining to a particular mass casualty event under investigation. Therefore, plaintiffs' argument is misplaced.

We readily acknowledge that the word "any" means an absence of limitation. See *People v Ackerman*, 80 Mich 588, 589-590; 45 NW 367 (1890) (explaining that the Legislature intended to remove a limitation by amending the word "the" to the word "any"); *Dunn v Sutliff*, 1 Mich 24, 24-25 (1847) (treating the word "any" as synonymous with "all" and indicating a lack of restriction). But the phrase "any privilege" is limited to the body agreeing to the waiver. Contrary to plaintiffs' argument that "any privilege" could be read to require individuals to waive any of their *own* rights, the statutory language in MCL 388.1631aa(9) is clear—only the *district or school* receiving funds must agree to the waiver. And this reading makes sense logically, too, as the school district or school entity cannot waive the rights held by individuals employed by the school district. *Woodman ex rel Woodman v Kera, LLC*, 486 Mich 228, 243; 785 NW2d 1 (2010) (no person may "impose obligations upon and waive the rights of third parties in the absence of legally cognizable authority to do so."); accord *People v Bragg*, 296 Mich App 433, 465; 824 NW2d 170 (2012) ("It is well settled that privileges belong to the holder alone and may be waived only by the holder."). Nothing in MCL 388.1631aa suggests or states that the Legislature intended to abrogate the common law and permit schools and districts to waive any rights that do not belong to the school or district.[4] See *McMaster v DTE Energy Co*, 509 Mich 423, 434; 984 NW2d 91 (2022) ("[T]he Legislature should speak in no uncertain terms when it exercises its authority to modify the common law.") (quotation marks and citations omitted).

Plaintiffs argue that they might not know to whom a particular privilege belongs under some circumstances, so they could be subject to criminal penalties under MCL 388.1761: "[a] school official or member of a board or other person who neglects or refuses to do or perform an act required by this act or who violates or knowingly permits or consents to the violation of this act is guilty of a misdemeanor[.]" Even though plaintiffs may not easily be able to determine whether a particular piece of information is protected by a privilege belonging to an individual, their concern about criminal penalties is unfounded because existing caselaw provides adequate guidance that is contrary to plaintiffs' interpretation.

First, the fact that the statute does not specify whether the neglect, refusal, or violation must be knowing or intentional is not dispositive. In the absence of any indication that the Legislature intended to dispense with a *mens rea* requirement, this Court must construe a criminal statute as impliedly requiring intent, knowledge, or recklessness. *People v Tadgerson*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165678); slip op at 5-18. Second, this Court has

_____

[4] Plaintiffs also argue that the privilege waiver in MCL 388.1631aa is impermissibly vague because it does not explain whether the disclosed information would be available or discoverable after being disclosed to the investigator. But the fact that districts may not be able to guess at the long-term consequences of those actions does not make the statute unconstitutionally vague.

held that "good faith" is the opposite of "a neglect or refusal to fulfill some duty." *Medley v Canady*, 126 Mich App 739, 747-748; 337 NW2d 909 (1983). In other words, a prohibition against neglecting or refusing some duty, as here in the plain language of this statute, is not violated if the person acted in good faith. *Macbeth Evans Glass Co v Gumbinsky*, 201 Mich 18, 21, 25-26; 166 NW 936 (1918); *Coville v Bentley*, 76 Mich 248, 250; 42 NW 1116 (1889). Thus, if an administrator or employee invokes a privilege in the good-faith belief that they are entitled to invoke that privilege, they are likely not in violation of MCL 388.1761, even if it is ultimately determined that they did not have a right to invoke the privilege.

The privilege waiver is further modified by a restrictive clause as the waiver is only applicable "in the event of a mass casualty event." While no published decision in Michigan has expressly defined the phrase "in the event of," it has been treated as indicating a conditional occurrence. *Powers v Fisher*, 279 Mich 442, 452; 272 NW 737 (1937); *Rutherford v Chrysler Motors Corp*, 60 Mich App 392, 398; 231 NW2d 413 (1975). That is consistent with dictionary definitions indicating that it is an idiom that essentially means "if (something) happens."[5] That interpretation is further supported when we consider that the statute addresses "any privilege" that "may otherwise protect information from disclosure." When both words in the phrase "may otherwise" are considered together and in context, it clearly serves a similar role as the phrase "would otherwise," but indicates a possible alternative rather than a definite alternative. Thus, in plain English, the language in MCL 388.1631aa(9) means that schools and districts receiving funds must waive privileges that "may otherwise protect information from disclosure" if a mass casualty event occurs.[6]

The statute goes on to define, albeit quite broadly, the four possible circumstances that would qualify as a "mass casualty event." MCL 388.1631aa(12)(a) defines a "mass casualty event" as an incident that occurs on school grounds or at a school-sponsored event and: (1) results "in significant injuries to not fewer than 3 individuals," (2) results "in fatalities," (3) "exceeds the normal resources for emergency response available in the jurisdiction where the incident takes place," or (4) "results in a sudden and timely surge of injured individuals necessitating emergency services." Plaintiffs argue that this definition in full is ambiguous because MCL 8.3b provides that singular and plural words can be interchangeable. However, MCL 8.3 commands that such rules of construction should not be observed if they "would be inconsistent with the manifest intent of the legislature." When MCL 388.1631aa(12)(a) is read in context, the Legislature's repeated references to "an incident," and its reference in subsection (9) to a singular investigation into a singular event, indicate that the Legislature intended for any of those four possibilities to arise

---

[5] Merriam-Webster.com Dictionary <https://www.merriam-webster.com/dictionary/in%20the%20event%20of> (accessed April 7, 2026); Garner's Modern English Usage (5th ed), p 418.

[6] While the privilege waiver does not include the phrase "comprehensive investigation," we agree with the Court of Claims that when read in context, "it is clear that the privilege waiver will be triggered only during a comprehensive investigation following a mass casualty event." This same language also limits the waiver temporally to only last during the comprehensive investigation.

from a single, discrete incident.[7]  Plaintiffs also take issue with specific portions of the definition of "mass casualty event" and each is addressed below.

### 3.  "SIGNIFICANT INJURIES"

Plaintiffs argue that the word "significant" that modifies "injuries" is vague, but that argument ignores that this Court has held the term "significant," when modifying the phrase "mental suffering or distress," is not vague and means "a noticeably or measurably large amount of mental pain, or, to a noticeably or measurably large extent . . . great mental strain or difficulties." *People v Eichler*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371360), slip op at 5-6.  By analogy, "significant injuries" must be more than merely noticeable or measurable. Furthermore, the same discrete incident must result in such injuries to three or more people, so it is also not enough that three people coincidentally happened to suffer injuries.  Plaintiffs also argue that the statute does not narrow the scope of "injuries," so they could range from physical to economic to reputational.  But reading the word in the context of the statute reveals that the Legislature intended for the "injuries" to be strictly physical because the statute references fatalities and emergency services.  See *Koontz v Ameritech Services, Inc.*, 466 Mich 304, 318; 645 NW2d 34 (2002) ("[A] word or phrase is given meaning by its context or setting.")  As the Court of Claims found, "[t]his definition may be broad, but it is understandable."

### 4.  "FATALITIES"

Relatedly, plaintiffs are correct that the statute does not limit the causes of the "fatalities" referenced in the definition of mass casualty event, meaning that those deaths could result from a structural building failure or a weather event.  Plaintiffs ignore that this merely makes the statute broad and not vague.

### 5.  "EXCEEDS THE NORMAL RESOURCES"

Plaintiffs next argue that the phrase "exceeds the normal resources for emergency response available in the jurisdiction" could vary from jurisdiction to jurisdiction and the time of day and could, therefore, lead to false alarms, subjective determinations after the fact, and arbitrary enforcement.  However, the variance between jurisdictions appears to have been the intent of the Legislature.  Rather than set a specific resource amount that is "normal" across all districts in Michigan, which themselves vary in size, location, and geographic proximity to emergency services, the Legislature left it to each district.  But in doing so, it did not leave this to "subjective determinations after the fact," because if an incident occurs that exceeds the resources actually

---

[7] Plaintiffs revisit this argument as to the word "fatalities," arguing that it could refer to a single fatality because MCL 8.3b provides that singular and plural words are interchangeable.  We reiterate that MCL 8.3b is not an inflexible mandate and applying it would make no sense in context.  The word "mass" is commonly understood, in relevant part, as referring to a large quantity.  That understanding is consistent with the three other possibilities, each clearly anticipating multiple people being injured or requiring services.  Thus, in context, the Legislature intended "fatalities" to mean two or more deaths.

available, it is difficult to imagine how it would not be obvious whether those resources were depleted. That is particularly true where this same statute includes various documentation requirements in advance of and after resource expenditure. And finally, plaintiffs' concern of arbitrary enforcement appears remote, and even if it was possible, that mere possibility does not render the statute unconstitutional under a facial challenge. See *Allison v Southfield*, 172 Mich App 592, 596; 432 NW2d 369 (1988) ("Even if one of the evils sought to be prevented by the vagueness doctrine is the vesting of unstructured discretion and the resultant arbitrary and [discriminatory] enforcement of the law, the doctrine is not triggered unless the wording of the promulgation is itself vague.") (citation omitted).

## 6. "SUDDEN AND TIMELY SURGE OF INJURED INDIVIDUALS"

As plaintiffs argue, and as the Court of Claims agreed, the word "timely" seems to be incongruous in this context. Furthermore, "sudden" is seemingly subsumed by the word "surge." Ordinarily, the use of different words implies that they were intended to have different meanings. *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Reh)*, 484 Mich 1, 14; 795 NW2d 101 (2009). However, that canon of interpretation is not absolute, and sometimes statutes are drafted to "include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach." *Miller v Dep't of Corrections*, 513 Mich 125, 146; 15 NW3d 129 (2024) (quotation marks and citation omitted). Given the overlap between "sudden" and "surge," it is likely that the word "timely" was another redundant reference to something happening within a narrow window of time. In other words, "sudden," "timely," and "surge" reflect an inartful "belt-and-suspenders approach" to conveying that an abnormally large number of injured individuals all require emergency services within a short amount of time. Nevertheless, the fourth option is not vague or meaningless because it permits only one reasonable interpretation.

In short, when read carefully, the amendments are not unconstitutionally vague, the scope of the waiver is not unlimited, and plaintiffs need not fear criminal sanctions for invoking a privilege in good faith. The Court of Claims correctly rejected plaintiffs' facial void-for-vagueness challenge.

## B. THE PRIVILEGE WAIVER DOES NOT VIOLATE THE UNCONSTITUTIONAL CONDITIONS DOCTRINE

Because the schools never had any constitutional rights, and because individuals are not subject to direct or indirect waivers of their rights for the reasons discussed above, the privilege waiver is not unconstitutionally coercive.

"As a general matter, if a party objects to a condition on the receipt of [governmental] funding, its recourse is to decline the funds." *Agency for Int'l Dev v Alliance for Open Society Int'l, Inc*, 570 US 205, 214; 133 S Ct 2321; 186 L Ed 2d 398 (2013). "Individuals also have no constitutional right to receive any particular governmental benefits," and they usually may voluntarily waive their rights. *AFT Mich v State of Mich*, 497 Mich 197, 225; 866 NW2d 782 (2015). But under some circumstances, the government may be prohibited from effectively coercing a person into waiving a constitutional right by denying a benefit to that person, even if the person has no right to that benefit. *Matal v Tam*, 582 US 218, 239-240; 137 S Ct 1744; 198 L

-11-

Ed 2d 366 (2017); *AFT Mich*, 497 Mich at 225-226. A waiver of a constitutional right is also not voluntary if it is "secured under threat of substantial economic sanction." *In re Blakeman*, 326 Mich App 318, 338; 926 NW2d 326 (2018) (quotation marks and citation omitted).

However, plaintiffs cite no authority suggesting that the government may be similarly prohibited from conditioning a benefit on waiving a nonconstitutional, i.e., statutory or common-law, right or privilege. While plaintiffs characterize the statute as offering them a Hobbesian choice,[8] they fail to identify any constitutional right that the schools or districts might be required to waive, and they concede in their reply brief that the schools do not have any such rights. Plaintiffs argue that administrators and employees will be effectively coerced into waiving their own individual rights. But for the reasons discussed above, any individual remains entitled to invoke their own privileges, and to the extent it may be unclear to whom a privilege belongs, they will not be exposed to criminal liability for invoking such a privilege in good faith. Therefore, MCL 388.1631aa(9) is not unconstitutionally coercive.

## C. THE PRIVILEGE WAIVER DOES NOT VIOLATE ARTICLE 4, §24 OF THE MICHIGAN CONSTITUTION

The "Title-Object Clause" of the Michigan Constitution provides:

> No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title. [Const 1963, art 4, § 24.]

The goal of this provision is to prevent subterfuge by legislators intent upon getting a particular type of legislation passed quickly and to thereby ensure adequate notice to the public. *Enbridge Energy, LP v Michigan*, 332 Mich App 540, 545-546; 957 NW2d 53 (2020). Three kinds of challenges may be brought against statutes on the basis of Const 1963, Art 4, § 24: "(1) a 'title-body' challenge, (2) a multiple-object challenge, and (3) a change of purpose challenge." *Id.* at 545 (quotation marks and citation omitted). Plaintiffs bring all three kinds of challenges.

## 1. TITLE-BODY CHALLENGE

A title-body challenge claims "that the title of the act does not adequately express the content of the law." *People v Kevorkian*, 447 Mich 436, 453; 527 NW2d 714 (1994). The title need not "serve as an index to all of the provisions of the act." *Enbridge Energy*, 332 Mich App at 546 (quotation marks and citation omitted). "[I]t is sufficient that the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or

---

[8] "A Hobbesian choice, derived from the theories of political philosopher Thomas Hobbes, is commonly known as a choice between two equally unacceptable alternatives." *In re Blakeman*, 326 Mich App at 335 n 5.

incidental to that general purpose." *Pohutski v City of Allen Park*, 465 Mich 675, 691-692; 641 NW2d 219 (2002) (cleaned up).

Important to this particular case, "[t]he tieing of legislative strings to appropriations of state funds for governmental purposes has never been considered as adding a second object to an appropriation law." *Lewis v Michigan*, 352 Mich 422, 430; 90 NW2d 856 (1958) (quotation marks and citation omitted). The Legislature may place conditions on a recipient's use of appropriations funding, which only violates the Title-Object Clause if "the subjects are so diverse in nature that they have no necessary connection." *Kalamazoo v Dep't of Corrections*, 212 Mich App 570, 572; 538 NW2d 85 (1995) (quotation marks and citation omitted).

The title of the SSAA recites:

> AN ACT to make appropriations to aid in the support of the public schools, the intermediate school districts, community colleges, and public universities of the state; to make appropriations for certain other purposes relating to education; to provide for the disbursement of the appropriations; to authorize the issuance of certain bonds and provide for the security of those bonds; to prescribe the powers and duties of certain state departments, the state board of education, and certain other boards and officials; to create certain funds and provide for their expenditure; to prescribe penalties; and to repeal acts and parts of acts. [1979 PA 94, as amended by 2011 PA 62, title.]

The privilege waiver is a condition precedent to receiving funds related to school safety and security. Other conditions can be found throughout the SSAA, including but not limited to maintaining particular attendance levels and/or recording, analyzing, and publishing student data, and also do not expressly make their way into the (already quite long and extensive) title paragraph. As the Court of Claims observed, "[p]laintiffs do not deny that these provisions are directly germane to supporting school safety and mental health . . . " which are in turn integral purposes "relating to education," as the title provides. The condition is "germane to the appropriation" which is about school safety and security, integral components to successfully educating a child. *Kalamazoo*, 212 Mich App at 572. We agree with the Court of Claims that the privilege waiver does not violate the title-body prong.

## 2. MULTIPLE-OBJECT CHALLENGE

"The [SSAA] was created to determine the manner in which state monies are disbursed to local school districts and the manner in which those funds may be used by the districts." *Holland-West Ottawa-Saugatuck Consortium v Holland Ed Ass'n*, 199 Mich App 245, 249; 501 NW2d 261 (1993). "The purpose of the single-object rule is to avoid bringing into one bill diverse subjects that have no necessary connection." *Id*. at 251. "The 'object' of a law is defined as its general purpose or aim," and an act may contain any provision germane to that object or in furtherance of that object. *Pohutski*, 465 Mich at 691. Unlike a title-body challenge, a multiple-object challenge examines the body of the act rather than its title. *Kevorkian*, 447 Mich at 458-459. An act does not violate the single-object rule merely because the Legislature could have done a tidier job of legislating and arguably ought to have placed a provision somewhere else. *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 441; 878

-13-

NNW2d 891 (2015).  An act violates the single-object rule if it "contains subjects diverse in their nature, and having no necessary connection." *Livonia v Dep't of Social Servs*, 423 Mich 466, 499; 378 NW2d 402 (1985) (quotation marks and citation omitted).  An act does not violate the single-object rule merely because it has multiple objectives, so long as all objectives are relevant to the same overall purpose.  *Kevorkian*, 447 Mich at 456 n 20.

We begin first with examples of violations of the single-object rule:

- the Legislature attempted to create a new classification of peace officers within an act that had the purpose of regulating motor vehicles for hire.  *People v Carey*, 382 Mich 285, 295-297; 170 NW2d 145 (1969).

- the Legislature enacted an act that repealed multiple existing laws and included multiple regulations of different topics.  *In re Advisory Opinion on Constitutionality of 1975 PA 227 (Question 1)*, 396 Mich 123, 126-133; 240 NW2d 193 (1976), supplemented on other grounds 396 Mich 465 (1976).

- the Legislature engrafted a prohibition against employers subjecting their employees to polygraph tests into the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., because that was not germane to the purpose of protecting persons belonging to a disadvantaged group from discrimination but rather "an afterthought, an attempt to wedge a regulation into a vessel not competent to carry it."  *Hildebrand v Revco Discount Drug Centers*, 137 Mich App 1, 10-12; 137 NW2d 778 (1984).

We pause at the third bullet point, as it seems to most closely resemble the circumstances here.  In *Hildebrand*, this Court found the amendment to the ELCRA that included limiting the use of polygraph tests for employment decisions to be an unconstitutional violation because it was not "germane to the civil rights statute, whose purpose is to prevent discrimination against a person because that person belongs to a stated group."  *Id.* at 10-11.  By contrast, the object of the SSAA is to direct funding to schools and to prescribe how those funds are to be used.  The privilege waiver is a condition on receipt of funding specifically allocated for school safety and student mental health.  Plaintiffs emphasize in their pleadings and again at oral argument that it is the privilege waiver, and not the larger comprehensive investigation, with which they identify constitutional concern.  However, we note that the investigation is intended to generate a report that "include[s] recommendations for preventing future incidents and improving safety protocols."  MCL 388.1631aa(9)(c).

In other words, the newest amendment to the SSAA, like those past, "is a means of advancing the general object" of the Act, *Holland-West Ottawa-Saugatuck Consortium*, 199 Mich App at 251, and is not constitutionally violative of the single-object rule.

### 3.  CHANGE-OF-PURPOSE CHALLENGE

"When confronting a change-of-purpose challenge, a court must consider whether the change comprises a mere amendment or extension of the basic purpose of the original bill or instead introduces an entirely new and different subject matter."  *Gillette*, 312 Mich App at 444. "[T]he test for determining if an amendment or substitute changes a purpose of the bill is whether

the subject matter of the amendment or substitute is germane to the original purpose," which "is much like the standard for determining whether a bill is limited to a single object." *Kevorkian*, 447 Mich at 461. A violation of the change-of-purpose prohibition has been found when the Legislature selected an introduced bill that had originally been intended as "a fairly pedestrian" and "innocuous" proposal to amend the Michigan Election Law in minor ways and, over the course of just over two hours, transformed it into a substitute bill that instead reapportioned Michigan's legislative districts. *Anderson v Oakland Co Clerk*, 419 Mich 313, 319-322, 329-331; 353 NW2d 448 (1984). No violation of the change-of-purpose prohibition was found when a bill amendment merely extended the original bill by incorporating additional provisions that fell within the same basic purpose of the original bill. *Gillette*, 312 Mich App at 445-446.

In adding MCL 388.1631aa(9), the Legislature did not make a sweeping change to the fundamental nature of the bill, which originated as and remained primarily about funding schools and directing the use of those funds. This is particularly true for the privilege waiver, which is a condition on the provision of funding. The amendment here is more like the addition of new provisions to a bill in *Gillette* than the legislative pursuit of a wholly different objective in *Anderson*. Thus, it did not violate the change-of-purpose rule.

## D. THE PRIVILEGE WAIVER DOES NOT VIOLATE THE SEPARATION OF POWERS

MCL 388.1631aa does not create, abolish, redefine, expand, narrow, or in any way change any privilege. The statute does not identify any specific privilege that funding recipients agree to waive, so it does not imply that funding recipients have or lack any particular privileges. Rather, it offers funding recipients a choice of waiving their privileges, whatever those privileges might be, in exchange for specific funds. The Legislature may impose conditions on the receipt of funding. And anyone may choose to waive any privilege. *Bragg*, 296 Mich App at 465-467. The statute does not, therefore, intrude into Michigan Supreme Court's authority to determine the contours and applicability of any given privilege.

## III. CONCLUSION

Finding no constitutional infirmity with the privilege waiver, we affirm the Court of Claims opinion and order granting defendants' motion for summary disposition and denying plaintiffs' motion for summary disposition.

/s/ Adrienne N. Young
/s/ Daniel S. Korobkin
/s/ Mariam S. Bazzi

-15-